UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-359-GWU

REGINA PARKER,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Parker

4.      Can the claimant's severe impairment(s) be expected to result
        in death or last for a continuous period of at least 12 months?
        If yes, proceed to Step 5.  If no, the claimant is not disabled.
        See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of
        impairments meeting or equaling in severity an impairment
        listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of
        Impairments)?  If yes, the claimant is disabled.  If no, proceed
        to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a),
        416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his
        residual functional capacity and the physical and mental
        demands of the work he has done in the past, still perform this
        kind of past relevant work?   If yes, the claimant was not
        disabled.   If no, proceed to Step 7.   See 20 C.F.R.
        404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his
        residual functional capacity, age, education, and past work
        experience, do other work--i.e., any other substantial gainful
        activity which exists in the national economy?  If yes, the
        claimant is not disabled.   See 20 C.F.R. 404.1505(a),
        404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

        Applying this analysis, it must be remembered that the principles pertinent

to the judicial review of administrative agency action apply.   Review of the

Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence.  Jones v. Secretary of Health and

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Parker

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

Parker

pain arising from the condition; or (2) whether the objectively
established medical condition is of such a severity that it can
reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment.  The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987).  Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242

(6th Cir. 1990).

4

Parker

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

Parker

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

Parker

physical and mental impairments.  <u>Varley  v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Regina Parker, a 46 year old woman with a high school education and work experience as a cook, companion, and office helper (Tr. 192) was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of blindness in the right eye and low vision in the left eye  (Tr. 13). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 14-16).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff could perform any jobs if she had no exertional limitations, but did have the following non-exertional impairments.  (Tr. 192).  She: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally climb ramps or stairs; (3) had limited depth perception and a limited field of vision, and, although she was capable of reading with corrective lenses with her "good left eye," could not perform work that had binocular vision or peripheral vision as an essential job element; and (4) should avoid all exposure to unprotected heights or hazardous equipment. (Tr. 192-3). The VE responded that there were jobs that such a person could perform, and proceeded

7

Parker

to give the numbers in which they existed in the state and national economies. (Tr. 193).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

According to the plaintiff's testimony, poor vision was the only reason she was not able to work, and this problem had existed since childhood. (Tr. 179, 189). She had no vision in her right eye at all, but had no real difficulty with her left eye other than sometimes seeing blinking lights, which she had not mentioned to any doctor. (Tr. 186-9). She had graduated from high school and had no problem with reading or writing, although she had to hold a newspaper close to her face in order to see it. (Tr. 178-9, 189-90). Her main problem was seeing at a distance. (Tr. 186). She described her peripheral vision in the left eye as "pretty good." (Tr. 189). She could perform daily activities including dressing herself, washing dishes, attending church three times a week, visiting friends every day, and helping an elderly friend. (Tr. 179-81). The plaintiff had worked jobs as a school cook, companion for an elderly lady, and as a receptionist in a judge's office, where she used the copy machine but did not do typing. (Tr. 182-4). She said she had no problems performing this job. (Tr. 185). She had never obtained a driver's license, but said that this was because no one would ever teach her. (Tr. 178).

Medical records in the transcript confirm that the plaintiff had vision problems as a child (e.g., Tr. 146-51). In 1966, her corrected vision in the left eye was

8

Parker

approximately 20/30, and was the same in 1973 and 1980. (Tr. 138, 147). A detailed examination was performed by Dr. T. D. Pruitt, an ophthalmologist, on February 13, 1993. (Tr. 128). Dr. Pruitt summarized the plaintiff's condition by saying that the patient had only light perception in her right eye with no hope of improvement, and while the left eye had a "large refractive" she could see 20/20 with glasses. (Tr. 131). Visual fields were full in both eyes. (Id.). He concluded that "[t]his patient should be able to carry out any occupation as regards her eyes that does not require good binocular vision." (Id.).

After the plaintiff's alleged onset date of June 15, 2000, after which she stated that "I just didn't want to work anymore" (Tr. 53-4), medical evidence is limited. It includes an examination by Dr. Syamala H.K. Reddy, an ophthalmologist, on December 14, 2004. His testing showed light perception only in the right eye and "finger count only for distance" in the left eye, but with a corrective lens, the left eye improved to "20/50 + 3." (Tr. 157). The left eye also had a clear vitreous on fundoscopic evaluation and an apparently normal optic disk, but had a myopic retina. (Id.). Dr. Reddy concluded that the claimant was suffering from severe loss of vision in the right eye due to old inflammatory disease, and that even with cataract surgery her right eye vision might not be improved as she already had developed optic atrophy. (Id.). With her left eye vision improved with a corrective lens, however, she would be able to perform basic work activities such as walking, bending, carrying weights, and using public transportation. He added that her function could be much

9

Parker

better if she was able to tolerate and wear a contact lens, which might improve her peripheral vision.  (Tr. 158).

A state agency physician, Dr. John Rawlings, reviewed the evidence and concluded that the plaintiff would have the ability to perform activities consistent with the ALJ's hypothetical question.  (Tr. 159-66).

The plaintiff points out on appeal that Dr. Rawlings had also commented in his assessment that she "may have slight difficulty with fine print and small tools" (Tr. 162), a factor not reported to the VE.  Given Dr. Rawlings' wording, it is not certain that he definitely intended to impose a restriction in these areas, and it is not clear that a "slight" difficulty would have a vocational impact, in any event.  Therefore, there is no reversible error in failing to include this language in the hypothetical question.

The plaintiff's primary argument on appeal is that Dr. Pruitt's visual field testing in 1993 provides evidence that she meets or equals the Commissioner's Listing of Impairment (LOI) 2.04, captioned "Loss of visual efficiency," and that the ALJ erred by not at least considering the Listing.  The plaintiff cites a chart attached to Dr. Pruitt's report apparently showing visual fields, and interprets it as showing a reduction which would meet the Listing.  The Commissioner disputes the plaintiff's calculations, and also points out that, as a threshold matter, the chart showing the visual field in the right eye is partially obscured due to the way the pages were copied, making it impossible to determine Dr. Pruitt's true findings.  (Tr. 129).  In

10

Parker

addition to this factor, the court also notes that Dr. Pruitt's narrative report specifically

states that visual fields were full in each eye.  (Tr. 131).[1]  Therefore, the state of the

evidence from Dr. Pruitt is simply too full of contradictions to provide a clear basis

for a remand.  Moreover, as previously noted, the plaintiff herself testified that her

peripheral vision in the left eye was "pretty good."  (Tr. 189). For all of these reasons,

the plaintiff's argument is unpersuasive.

The decision will be affirmed.

This the 14th day of May, 2007.

**Signed By:**

_G. Wix Unthank_

**United States Senior Judge**

---

[1]The plaintiff concedes that Dr. Reddy did not test visual fields in 2004, but points
to his statement that her peripheral vision might improve with a contact lens as
suggesting there was some limitation in visual fields.  (Tr. 158). However, the statement
alone is obviously too vague to support a conclusion that the plaintiff would meet or
equal the Listing.

11